**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALD KEEHN,** | : | |
| **Plaintiff** | : | **No. 1:23-cv-00932** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **LT. NEWBEARY, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Gerald Keehn ("Plaintiff"), a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution Rockview ("SCI Rockview") in Bellefonte, Pennsylvania. (Doc. No. 3.) He has commenced the above-captioned action by filing a pro se complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated at State Correctional Institution Frackville ("SCI Frackville") in Frackville, Pennsylvania. (<u>Id.</u>) In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of Plaintiff's complaint. For the reasons set forth below, the Court will dismiss Plaintiff's complaint but without prejudice to him filing an amended complaint.

## I.   BACKGROUND

On May 30, 2023, in the United States District Court for the Eastern District of Pennsylvania ("Eastern District"), Plaintiff filed his Section 1983 complaint against the following individuals, all of whom appear to be employed by the DOC and to have worked at SCI Frackville during the period of time relevant to his claims: Brittian, the warden; Lt.

---

[1] <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (Apr. 26, 1996).

Newbeary, a security lieutenant; Cpt. Reese, a security captain; Kephart, a deputy; and Forte, Walton, Storm, and Ferling, corrections officers.  (Id. at 2–4.)  On June 6, 2023, the Eastern District transferred the action to this Court on the basis that the alleged conduct occurred at SCI Frackville, which is located in Schuylkill County, and, thus, within the territorial boundaries of the Middle District of Pennsylvania.  (Doc. No. 5.)

After receiving the transfer order, a Thirty (30)-Day Administrative Order was issued to Plaintiff, directing him to either pay the requisite filing fee or file a motion seeking leave to proceed in forma pauperis.  (Doc. No. 8 (attaching the appropriate in forma pauperis form).) Plaintiff was cautioned that, if he failed to comply with the Administrative Order within thirty (30) days, this action would be subject to dismissal.  (Id.)  After those thirty (30) days passed, and Plaintiff neither paid the fee or filed a motion seeking leave to proceed in forma pauperis, nor sought an extension of time in which to do so, the Court dismissed this action without prejudice and directed the Clerk of Court to close this case.  (Doc. No. 9.)

Thereafter, on August 1, 2023, Plaintiff filed a letter with the Court, explaining that he had been transferred from SCI Frackville to SCI Rockview and that he could "resend everything again[,]" but that he "need[ed] forms[.]"  (Doc. No. 10 at 1.)  Thus, on August 7, 2023, a second Thirty (30)-Day Administrative Order was issued to Plaintiff, again directing him to either pay the requisite filing fee or file a motion for leave to proceed in forma pauperis.  (Doc. No. 11 (attaching the appropriate form).)  On August 28, 2023, Petitioner filed a motion seeking leave to proceed in forma pauperis, as well as his prisoner trust fund account statement.  (Doc. Nos. 12, 13.)  The Court, having reviewed Plaintiff's motion and account statement, will direct the Clerk of Court to reopen this case, grant Plaintiff's motion seeking leave to proceed in forma pauperis, and deem his complaint filed.

As for his complaint, Plaintiff generally asserts that "correctional staff harrass [sic]" him on second shift in the "R.H.U. everyday" and that they use "abusive language, threaten[ ] to do bodly [sic] injury" to him, and tell him that he "should kill [himself]" and that he "shouldn't be breathing[.]" (Doc. No. 3 at 10.) Plaintiff also generally asserts that "correctional staff" call "on other inmates to yell stuff[,]" and they tell other inmates "about [his] case[,]" which results in him getting "strong armed, robbed, exstorted [sic] ect. [sic]." (Id.) In support of these general assertions, Plaintiff sets forth the following factual allegations.

Plaintiff alleges that, on unspecified dates and times, Defendant Forte told "everyone on the tier" that Plaintiff "washed out in bootcamp[,]" is a "failed" Marine and preacher, kidnaps babies and molests foster kids, and should "hang" himself because his "life isn't worth shit[.]" (Id. at 5.) Plaintiff further alleges, and again on unspecified dates and times, that Defendant Forte told Plaintiff to "hang" and "kill" himself and that he has told inmates "to get at" Plaintiff and, if they do a "good job[,]" Defendant Forte will give them extra trays. (Id. at 6.) Finally, Plaintiff alleges, and again on unspecified dates and times, that Defendant Forte told Plaintiff that he wanted to "choke" Plaintiff "out" and that he was going to "mace" him and then "piss" on him to get the mace off, because Plaintiff does not "deserve milk or water." (Id.)

Plaintiff explains that he told his psychologist, Mrs. Smith, about Defendant Forte and asked her how Defendant Forte could have "access to [his] file[,]" and Mrs. Smith stated that Defendant Forte was "not supposed to, nor be saying things[,]" and "she reported it." (Id. at 5.) Plaintiff also explains that he spoke to the "unit manager" and Defendants Kephart and Brittian; however, Plaintiff does not specify when he spoke with them. (Id. at 6.) Nevertheless, Plaintiff appears to suggest that nothing was done and that Defendant Forte came "back to work on

4/21/23" and went to Plaintiff's cell, yelling obscene things.  (Id.)  Plaintiff wrote a grievance, asking that the video from "4/5/23" be "save[d]."  (Id.)

In addition, Plaintiff asserts that, on unspecified dates and times, Defendant Walton told Plaintiff that he was going to "knock [him] out" and "take [his] ass like [Plaintiff] did to that girl" and that he "said he was going to make sure everyone knew who [Plaintiff] was and what [he] was."  (Id. at 7.)  Plaintiff also asserts that Defendant Walton told other correctional staff and block workers that Plaintiff is a convicted pedophile.  (Id.)  Plaintiff claims that, as a result of this, he was placed in the "R.H.U. on AC[.]"  (Id.)  Plaintiff further claims that the "2 shift Cos have made it their mission since April 5[,] 2023[,] to not let [him] shower, get clean lynon [sic], clean [his] cell."  (Id.)

In a similar vein, Plaintiff alleges that Defendants Storm and Ferling have made comparable remarks to him and that they are trying to harass him.  (Id. at 7–8.)  More specifically, Plaintiff claims that Defendant Storm, on an unspecified date and time, told "the wing" that Plaintiff "rape[s] little girls" and that he told Plaintiff that he needs to hang himself if he wants to "make it out of SCI Frackville with [his] ass intact."  (Id. at 7.)  Plaintiff also appears to claim that, on May 10, 2023, Defendant Storm threatened to issue Plaintiff a misconduct for attempting to send toilet paper to a fellow inmate, unless Plaintiff told everyone he "rape[s] little girls[.]"  (Id. at 8.)  As for Defendant Ferling, Plaintiff asserts that he wants to "grind" Plaintiff "up" and that he stated, on an unspecified date and time, that Plaintiff is a "[b]aby raper, little boy toucher[,]" and that he has given up on "little boys to suck transgender dick with fake tits." (Id. at 7.)  Plaintiff explains that he told Mrs. Smith about this and that he also "complained" to the "P.R.C.[,]" the unit manager of the RHU, and Defendants Brittian and Kephart.  (Id. at 8.) Plaintiff, however, does not specify when or how he complained to these Defendants.  Plaintiff

alleges, however, that he spoke to Defendant Reese on "May/11/2023" and that Defendant Reese stated that Plaintiff "wasn't the only person complaining about 2 shift."  (<u>Id.</u>)

In addition to these various allegations that Plaintiff has asserted against the DOC employees, Plaintiff also claims that he is being bullied, robbed, and extorted by inmates at SCI Frackville.[2]  (<u>Id.</u> at 17.)  Although Plaintiff claims that he communicated this to Defendant Newbeary and "Security[,]" he only goes to the "R.H.U. for a week" and is sent back to "population."  (<u>Id.</u>)  Plaintiff appears to allege that, at some point while he was housed in the RHU, his television was stolen.  (<u>Id.</u>at 17, 18.)  Plaintiff also appears to allege that, when he complained about this and wrote a grievance, Defendant Newbeary took Plaintiff to his office and said that if Plaintiff "didn't stop he was gonna make sure [Plaintiff] got put in a cell with some one [sic] who whould [sic] take [his] ass."  (<u>Id.</u>)  Plaintiff alleges that he reported Defendant Newbeary.  (<u>Id.</u>)  In addition to his television, Plaintiff asserts that his commissary items and shoes were stolen.  (<u>Id.</u>)

In connection with all of these allegations, Plaintiff appears to assert a single Eighth Amendment claim to be "free from cruel, unusual punishment."  (<u>Id.</u> at 3.)  Additionally, he claims that he has suffered from or received treatment for the following: "mental, emotional, headaches, chest pain, anxioty [sic], medication."  (<u>Id.</u> at 10.)  As for relief, "all [Plaintiff] want [sic] is for the D.O.C. Frackville [to] reimbusrt [sic] [his] account for what was stolen."  (<u>Id.</u> at 19 (referencing his television, $200 worth of commissary items, and $180 worth of sneakers).)  In addition, Plaintiff requests that correctional staff "wear go pro or simular [sic][.]"  (<u>Id.</u>); <u>see also</u> <u>id.</u> at 10 (seeking reimbursement for stolen items and for DOC corrections officers to wear

---

[2]  As stated above, however, Plaintiff was transferred from SCI Frackville to SCI Rockview during the pendency of this lawsuit.  (Doc. No. 10.)

"body cameras so it's not just a [sic] inmate claiming something[,] their [sic] would be proof it happened or didn't").)

Following the very last page of his complaint, Plaintiff attaches a sheet of paper, identifying eleven (11) items, which appear to be separate pieces of documentary evidence that he seeks to submit in support of his complaint.  (Id. at 20 (identifying, inter alia, a receipt for the television he purchased, "letter's request slips[,]" a grievance, handwritten statements of Plaintiff "asking for help[,]" and complaints concerning missing commissary items).)   Following this sheet of paper are twenty-seven (27) pages of exhibits.  (Id. at 21–48.)  The relevant dates of these exhibits span the timeframe from July 6, 2019, to April 18, 2023.  (Id.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the specific context of pro se prisoner

litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

## III.   DISCUSSION

As discussed above, Plaintiff has filed his pro se complaint pursuant to the provisions of Section 1983. (Doc. No. 3.) That statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983. Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

Here, the alleged violation is of the Eighth Amendment to the United States Constitution. "The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Glossip v. Gross, 576 U.S. 863, 876 (2015). In order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of

life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" See <u>Porter v. Pennsylvania Dep't of Corr.</u>, 974 F.3d 431, 441 (3d Cir. 2020) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)).

Ultimately, the Court concludes that Plaintiff's Section 1983 complaint, which is based upon a violation of his Eighth Amendment rights, fails to satisfy Rule 8 of the Federal Rules of Civil Procedure. Rule 8 governs the general rules of pleading, and it requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" <u>See</u> Fed. R. Civ. P. 8(a)(2). This short and plain statement must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest. <u>See</u> <u>Erickson</u>, 551 U.S. at 93. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief[; it] has to show such an entitlement with its facts." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 211 (3d Cir. 2009) (citation and internal quotation marks omitted). Under the pleading standard of Rule 8, "[t]he Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." <u>See</u> <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

Here, although Plaintiff's complaint discusses the alleged wrongdoing by Defendants while he was incarcerated at SCI Frackville, it generally does not provide factual allegations as to when and where such alleged wrongdoing occurred. In addition, while the Court treats Plaintiff's complaint as asserting an Eighth Amendment claim against Defendants, his complaint does not clearly allege the elements of this claim (<u>i.e.</u>, the two-pronged test discussed above) as to each Defendant. And, finally, although Plaintiff's complaint names specific individuals as Defendants, it does not set forth the harm that each individual allegedly caused him or how each individual's conduct caused him such harm.

9

Accordingly, because Plaintiff's complaint does not provide fair notice of the grounds upon which his claim rests, the Court concludes that his complaint does not satisfy Rule 8 of the Federal Rules of Civil Procedure.  See Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) (stating that, "[n]aturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8" (citations and internal quotation marks omitted)); Hill v. Thomas, No. 3:13-cv-00174, 2016 WL 1245552, at *3–4 (M.D. Pa. Mar. 23, 2016) (concluding that the plaintiff's amended complaint failed to satisfy the requirements of Rule 8 where there were no details concerning dates, times, places, or individuals involved).

The final issue is whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]"  See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court cannot say that granting Plaintiff leave to amend would be futile and, thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above.  Plaintiff is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint shall set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Finally, Plaintiff is cautioned that neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court will direct the Clerk of Court to reopen this case, grant Plaintiff leave to proceed in forma pauperis, and dismiss his complaint (Doc. No. 3) for failure to comply with Rule 8 of the Federal Rules of Civil Procedure.  The Court will also grant Plaintiff leave to file an amended complaint.  An appropriate Order follows.


 s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

11